UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                    -against-

ISIAH SADLER,

                              Defendant.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-cv-5923 (AMD)
16-cr-0297-8 (AMD)

**ANN M. DONNELLY,** United States District Judge:

Isiah Sadler, proceeding *pro se*,[1] moves to vacate his sentence pursuant to 28 U.S.C. § 2255. On April 17, 2017, the defendant pled guilty to one count of "conspiracy to distribute and possess with intent to distribute cocaine and cocaine base" in violation of 21 U.S.C. §§ 846, 841(b)(l)(A)(iii) and 841(b)(l)(B)(ii)(II), as well as 18 U.S.C. § 3551, *et seq*. (*See* ECF. No. 1.)[2] On October 10, 2017, I sentenced the defendant to 168 months imprisonment and four years of supervised release. (ECF No. 224.) The defendant now moves to vacate, set aside, or modify his sentence, alleging ineffective assistance of counsel and challenging his classification as a "career offender" under the federal sentencing guidelines. (ECF No. 338.) He also moves to appoint CJA counsel to assist with his habeas petition, and seeks emergency bail while his petition is pending. (ECF Nos. 343, 384, 385.)[3] For the reasons that follow, the petition is denied.

---

[1] The defendant was represented by counsel up to and during his sentencing, but is proceeding *pro se* for purposes of this motion.

[2] Although the clerk's office opened a civil case (18-CV-5923) for the defendant's habeas petition, the petition and all responsive documents were filed on the criminal docket (16-CR-297).

[3] The Court has evaluated the factors outlined in *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1985), and finds that the "interests of justice" do not require the appointment of counsel to assist the defendant with his petition. *See* 18 U.S.C. § 3006A(a)(2); *United States v. Odom*, No. 17-CR-321-1, 2020 WL 30380, at *2 (S.D.N.Y. Jan. 2, 2020).

# BACKGROUND

## I.    Arrest and Indictment

In June of 2016, following a six-month investigation by the Federal Bureau of Investigation and the New York Police Department, a grand jury indicted the defendant and nine of his associates for conspiracy to possess and distribute cocaine and "crack" cocaine in the Cypress Hills neighborhood of Brooklyn. (ECF No. 1.) The indictment alleged that from December of 2015 through May of 2016, the defendants "knowingly and intentionally conspire[d]" to possess and distribute controlled substances including more than 500 grams of cocaine and 280 grams of a substance containing cocaine base. (*Id.* ¶ 1.) The investigation established that the defendant was a high-ranking member of the conspiracy; wiretap interceptions revealed that he was a "major wholesale dealer" of cocaine, trafficked firearms and other narcotics, and was involved with a large-scale financial fraud. (ECF No. 220 at 4-5.) The agents who arrested the defendant recovered two handguns from his car, $2,000 in cash, nine blank credit cards with chips, and four cell phones. (*Id.* at 5.)[4]

## II.    Guilty Plea

On April 17, 2017, the defendant pled guilty to the first count of the indictment pursuant to a global plea agreement with the government. (*See* ECF No. 344-1.) As part of the plea agreement, the defendant stipulated to the estimated sentencing guidelines range of 168 to 210 months, and agreed that he would not seek a sentence of less than 120 months. (*Id.* ¶ 2.) The government based its estimate on the defendant's designation as a "career offender" because of

---

[4] At the defendant's arraignment on June 7, 2016, Magistrate Judge Cheryl Pollak appointed CJA counsel Gary Schoer to represent the defendant, who pled not guilty to all counts; Judge Pollak ordered that the defendant be detained pending trial. (ECF No. 4.) On September 1, 2016, attorney James R. Froccaro filed a notice of appearance on the defendant's behalf and represented him at the guilty plea and during sentencing.

two New York drug convictions: a 2007 conviction for criminal possession of a narcotic drug in the third degree (New York Penal Law § 220.16(1)) for possessing cocaine and heroin with the intent to sell, and a 2012 conviction for criminal possession of a controlled substance in the fifth degree (New York Penal Law § 220.06(1)) for possessing MDMA ("molly") with the intent to sell. (ECF No. 220 at 10-11.)

The plea agreement provides that "[i]f the Guidelines range advocated by the Office, or determine[d] by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement." (*Id.* ¶ 3.) The defendant also agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 235 months or below." (*Id.* ¶ 4.) However, his waiver of collateral review of his sentence did not "preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum." (*Id.*)

At the plea hearing, the defendant confirmed that he had discussed the agreement with his attorney and understood that he was waiving certain rights. (4.17.17 Plea Hr'g Tr. at 9.) He stated that he understood that the estimated guidelines range was 168 to 210 months, but that the range was not guaranteed, and the sentence could be "either longer or shorter than the advisory guideline range sentence." (*Id.* at 12-13.) He affirmed that he understood that "[i]f the guideline range is different than [he] expect[s], [he] cannot take [his] plea back." (*Id.* at 13.) The defendant also acknowledged that pursuant to the agreement, he was giving up his right to appeal as long as the sentence was 235 months or shorter. (*Id.* at 14.)

3

**III.     Sentencing**

In his sentencing memorandum, the defendant's attorney advocated for a downward departure from the guidelines range, arguing that the defendant's status as a career offender "increased what would ordinarily be between 41-51 months in prison to a draconian 168-210 months in prison." (ECF No. 216 at 2.)[5] Counsel acknowledged that he was bound by the plea agreement to seek no less than 120 months, but cited cases in which similarly situated defendants received considerably less than 120 months for the same crimes. (*Id.* at 3, 8.)

The government and the probation department agreed that the proper guidelines range was 168 to 210 months. (ECF No. 220 at 6.) Citing the 18 U.S.C. § 3553 factors, the government argued that a sentence within the guidelines range would be appropriate. The defendant had a lead role within the conspiracy; he was "a significant distributor of cocaine" in the Cypress Hill housing projects, and was the go-to supplier of large amounts of cocaine and other drugs. (*Id.* at 8.) In addition, the government pointed out that while the defendant pled guilty to a one-count indictment, there was evidence that the defendant also trafficked firearms and other controlled substances, including marijuana and MDMA, and that he had been involved in a conspiracy to commit identity theft. (*Id.* at 9-10.) According to the government, the defendant's firearms trafficking was particularly serious and contributed to the increase in gun violence in the Cypress Hills neighborhood, and a "significant" sentence would deter others involved in criminal activity in the neighborhood. (*Id.* at 11.)

At sentencing on October 10, 2017, defense counsel again advocated for a below-guidelines range. (Sentencing Tr. at 10-11.) He acknowledged that "[t]here's no doubt that [the

---

[5] Without the career offender enhancements, the probation department calculated that the defendant would have had a base offense level of 26 (absent any reductions) and a criminal history category of III, for a guidelines range of 78-97 months. (ECF No. 144 at 17); *see also* United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Pt. A (Nov. 2016).

4

defendant] meets the technical definition of career offender," *id.* at 6-7, but argued that the defendant's two prior felony drug convictions were relatively minor and did not merit adding 68 months to his sentence, *id.* at 8, 11. After careful consideration of the factors outlined in § 3553, I sentenced the defendant to 168 months—the low end of the guideline range—four years of supervised release, a $100 fine and forfeiture of the property that was recovered when the defendant was arrested. (ECF No. 224.)

IV. **Second Circuit Appeal**

On October 18, 2017, the defendant filed an appeal with the Second Circuit Court of Appeals, even though he waived his right to appeal as part of the plea agreement. (ECF No. 229.) His attorney, Mr. Froccaro, moved to withdraw and asked the court appoint appellate counsel. *United States v. Sadler*, No. 17-3350 (2d Cir. Nov. 16, 2017), ECF No. 32. The court granted the application and appointed Paul Camarena as CJA counsel. *Id.*, ECF No. 51. The government moved to dismiss the appeal, *id.*, ECF No. 86, and Mr. Camarena filed an *Anders* motion to be relieved as counsel, representing that there were no nonfrivolous claims to be raised on appeal, *id.*, ECF No. 104.

On May 16, 2019, the Second Circuit granted counsel's *Anders* motion finding that "(1) 'counsel has diligently searched the record for any arguably meritorious issue in support of his client's appeal,' and (2) 'defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct.'" *United States v. Sadler*, 765 F. App'x 627, 629 (2d Cir. 2019) (quoting *United States v. Arrous*, 320 F.3d 355, 358 (2d Cir. 2003)). The Court also dismissed the appeal; it held that the defendant was "precluded from appealing his conviction or term of imprisonment" because he "pleaded guilty pursuant to a plea agreement" that he entered into

"knowingly, voluntarily, and competently." *Id.* (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000)).

**DISCUSSION**

Section 2255(a) permits a "prisoner in custody under sentence of a court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the "ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The defendant maintains that his lawyer was ineffective for advising the defendant that he was a career offender under the federal sentencing guidelines; as a result, the defendant argues that he "entered a guilty plea that was neither knowing, voluntary, or intelligent." (ECF No. 338 at 1).

I. **Waiver of Appeal**

As a preliminary matter, the defendant is not asking that the Court vacate his plea; instead, he requests only that the Court vacate the provision of the plea agreement waiving his right to appeal his sentence. (*See* ECF No. 348 at 3.) Pursuant to the plea agreement, the defendant agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 235 months or below." (ECF No. 344-1 ¶ 4.) The defendant acknowledged that the estimated guidelines range was 168 to 210 months, but that the sentence could be "either longer or shorter than the advisory guideline range sentence." (4.17.17 Plea Hr'g Tr. at 12-13.) Courts examining the validity of similar provisions have found that such waivers preclude a defendant from challenging the merits of the sentence if it is within the guidelines range set forth in the agreement. *See, e.g*, *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016); *United States v. Coston*, 737 F.3d 235, 238 (2d Cir. 2013); *United States v. Rosa*,

6

123 F.3d 94, 97 (2d Cir. 1997) (collecting cases); *United States v. Cabral*, No. 12-CR-0336-2, 2021 WL 535419, at *4 (E.D.N.Y. Feb. 5, 2021); *Antonucci v. United States*, No. 04-CR-828, 2009 WL 185996, at *3 (S.D.N.Y. Jan. 26, 2009).

A waiver of appeal is not enforceable if it goes against public policy, violates the defendant's constitutional rights or was not made knowingly, voluntarily, and competently. *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (citing *Gomez-Perez*, 215 F.3d at 318); *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995) ("Plea agreements are subject to the public policy constraints that bear upon the enforcement of other kinds of contracts."). The defendant confirmed that he understood that he was waiving his right to appeal or otherwise challenge his sentence, and that his plea was knowing and voluntary. Nor was the waiver provision against public policy. Indeed, the defendant received significant benefits in exchange for his agreement, including a reduced mandatory minimum sentence, an agreement from the government that it would not request an upward departure from the guidelines range, and the security that the government would not prosecute him for additional criminal conduct, which included firearms trafficking. *Cf. United States v. Lutchman*, 910 F.3d 33, 38 (2d Cir. 2018) (declining to enforce appellate waiver where "the agreement offered nothing to [defendant] that affected the likelihood he would receive a sentence below the statutory maximum" and thus lacked consideration). The sentence that the Court imposed was less than the 235-month maximum allowed under the plea agreement; therefore, the defendant is precluded from challenging his sentence.

## II.   Ineffective Assistance of Counsel

The plea agreement's waiver of appeal contains an exception for challenges based on ineffective assistance of counsel. (*See* ECF No. 344-1 ¶ 4.) The defendant claims that he would

7

not have pled guilty had his counsel not convinced him that he was a career offender under the federal sentencing guidelines. (ECF No. 338 at 3.) Therefore—construing the petition liberally—I interpret the defendant's petition as challenging the validity of his guilty plea because his counsel was ineffective in failing to question and correct the government's estimated sentencing guidelines.

The Sixth Amendment of the United States Constitution ensures that criminal defendants have the assistance of counsel; the very "purpose of the Sixth Amendment guarantee of the Assistance of Counsel . . . is to ensure that defendants have effective assistance of counsel." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (internal quotation marks and citations omitted).

A petitioner claiming that his lawyer was ineffective must meet the two-pronged test enunciated in *Strickland v. Washington*: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).

To satisfy the first prong, "[a] convicted defendant . . . must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[A] petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy." *Singleton v. Duncan*, No. 03-CV-561, 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006) (citing *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). Courts assessing whether counsel was ineffective "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and "relief may be warranted when a decision by counsel cannot be justified as a result of

some kind of plausible trial strategy," *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (citation omitted). "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test is satisfied only where the petitioner can establish that there is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). In the context of plea negotiations, "the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

The defendant has not established that his counsel's representation was objectively unreasonable. As I noted at sentencing, defense counsel "zealously" advocated for his client. (Sent. Tr. at 6.) He was able to negotiate a global settlement on the single count of conspiracy to possess and distribute cocaine, avoiding the possibility of a superseding indictment with additional serious charges. (ECF No. 344 at 3.) As part of the agreement, the government stipulated to a mandatory minimum of five years based on the recovery of 500 grams of cocaine, rather than the ten-year mandatory minimum for possession of 280 grams of crack cocaine, which was also included in the indictment. (*Id.*) The defendant's attorney submitted a thorough mitigation report with his sentencing memorandum and advocated for a significant downward

9

departure from the stipulated guidelines range. (ECF No. 216 at 13-40.) Although constrained by the plea agreement to seek no less than 120 months, counsel cited comparable cases where defendants who pled guilty to cocaine distribution conspiracy received substantially less time. (ECF No. 216 at 3-4.)

As the defendant points out, the Second Circuit held in *United States v. Townsend* that criminal possession of a controlled substance in the fifth degree—one of the convictions that made the defendant a career offender—is no longer a "controlled substance offense" under the federal sentencing guidelines. 897 F.3d 66, 74-75 (2d Cir. 2018). But that decision was issued on July 23, 2018, nine months after the defendant was sentenced and sixteen months after he pled guilty. I am required to evaluate the reasonableness of defense counsel's conduct at the time of the plea negotiations, without the "distorting effects of hindsight." *Smith*, 477 U.S. at 536. Counsel's decision not to challenge the career offender enhancement was not an "unreasonable" strategy that deprived the defendant of his Sixth Amendment rights.

Counsel agreed to the career offender enhancements because of the government's position at the time, which several courts in this circuit had unequivocally adopted, that a conviction for possession of a controlled substance in the fifth degree was a controlled substance offense. *See, e.g.*, *United States v. Santos*, No. 16-CR-302, 2018 WL 654443, at *7 (E.D.N.Y. Jan. 31, 2018) (holding that the defendant's "prior convictions under both § 220.06 and § 220.31 qualify as 'controlled substance offenses' under the Guidelines"); *United States v. Laboy*, No. 16-CR-669, 2017 WL 6547903, at *6 (S.D.N.Y. Dec. 20, 2017) (addressing whether New York's controlled substance statute is a predicate offense and holding that "the best way to promote uniformity is to give meaning to the Sentencing Commission's desire that state convictions for offenses related to the substances those states' control should qualify as

10

predicates"); Sentencing Transcript, *United States v. Townsend*, No. 15-CV-653, at 3 (E.D.N.Y Mar. 1, 2017), ECF No. 34. Although the government's position was not universally accepted in this district, *see United States v. Barrow*, 230 F. Supp. 3d 116, 125 (E.D.N.Y. 2017) ("[the defendant's] conviction under New York Penal Law § 220.31 is not a predicate crime for the purposes of enhancing his sentence under section 2K2.1 of the Sentencing Guidelines"), the government represents that it would not have offered a plea agreement at that time that did not include the career offender enhancements, (*see* ECF No. 344 at 7 ("[T]he government would not have offered a plea agreement that assumed Sadler's second drug conviction was not a 'controlled substance' offense; the government's position has consistently been that a New York conviction for selling controlled substances qualified as a predicate offense under the Guidelines.").) The fact that counsel did not anticipate the court's ruling in *Townsend* does not make his decision not to challenge the career offender enhancement unreasonable. *See Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (defense attorney's failure to anticipate changes in the law did not make his representation ineffective).[6]

But while the defendant would not have been designated as a career offender if he had been sentenced after *Townsend*, it does not follow that he was significantly prejudiced by his counsel's advice to plead guilty based on the enhanced guidelines range. First, had the defendant gone to trial on the charge to which he pled guilty—conspiracy to possess and distribute cocaine, including 280 grams of a substance containing cocaine base—the government could have submitted a prior felony information that would have increased his mandatory minimum sentence to 20 years. (ECF No. 344 at 2 (citing 21 U.S.C. § 841(b)(1)(A) (as effective Aug. 3, 2010 to Dec. 20, 2018).) In addition, the defendant was facing myriad other charges, including

---

[6] The Second Circuit decided the *Townsend* case before it decided the defendant's appeal, and cited *Townsend* in connection with its decision to affirm the conviction of one of the defendant's co-conspirators, Anthony Brown. *See United States v. Sadler*, 765 F. App'x 627, 630-31 (2d Cir. 2019).

possession of firearms, trafficking firearms, conspiracy to distribute marijuana and MDMA, and conspiracy to commit identity theft—charges that the government agreed not to pursue as part of the plea agreement. (ECF No. 344 at 3; ECF No. 344-1 ¶ 5(a).) Conviction on these charges would have increased the defendant's mandatory minimum sentence to 27 years—almost double the sentence that he actually received.[7]

Moreover, the evidence against the defendant—not only on the charge for which he was indicted, but also on the potential charges—was strong and included almost a month of wiretapped conversations, as well as substantial physical evidence seized during the defendant's arrest. *See Marston v. United States*, No. 17-CR-298, 2020 WL 6701014, at *3 (S.D.N.Y. Nov. 13, 2020) ("advising a client to plead guilty in the face of strong evidence, when a plea agreement lessens the severity of the sentence, is not evidence of prejudice sufficient to satisfy the second prong of *Strickland*"); *DeLeon v. United States*, No. 00-CR-1236, 2003 WL 21769836, at *6 (S.D.N.Y. July 30, 2003) (the defendant did not establish that his counsel's advice to plead guilty caused him prejudice because "there was strong, irrefutable evidence against him, and he received a considerable benefit under the terms of his plea agreement"). The defendant's claim that he would have taken his chances at trial had he been aware that he would not be subjected to the career offender enhancements is unavailing. *See Nicholas v. Smith*, 329 F. App'x 313, 316 (2d Cir. 2009) (The petitioner's "self-serving, after-the-fact statement that he would not have pleaded guilty if advised of the inconsistency and sentence exposure is insufficient evidence to demonstrate prejudice.").

---

[7] Conviction for possession of a firearm in relation to a crime of drug trafficking carries a mandatory minimum sentence of five years to run consecutively with the sentence for the drug trafficking charge. 18 U.S.C. § 924(c)(1)(A), (c)(1)(D)(ii) (as effective Oct. 6, 2006 to Dec. 20, 2018). Conviction of aggravated identity theft carries a mandatory two-year sentence which must run consecutively with any other term of imprisonment imposed by the court. 18 U.S.C. § 1028A(a)(1), (b)(2) (2004).

Accordingly, I find that defense counsel provided effective assistance during the plea negotiations, that the plea agreement was valid and that the defendant pled guilty knowingly and voluntarily.  Therefore, the petition to vacate the defendant's sentence is denied.

III.     **Emergency Bail Application**

The defendant moved for bail pending my decision on his § 2255 petition, and in light of the COVID-19 pandemic.  (ECF No. 384.)  To the extent that the bail application is based on the arguments in the habeas petition, it is denied as moot.

Reading the defendant's most recent application for bail liberally, it could be construed as a motion for compassionate release pursuant to 18 U.S.C. § 3582, which allows the court to reduce a term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction" after the defendant exhausts certain administrative remedies outlined by the statute. 18 U.S.C. § 3582(c)(1)(A).  The defendant argues that there are currently "25 inmates and 17 staff members infected with the deadly coronavirus" at FCI Otisville, and "[t]he conditions at the facility make contracting the disease a virtual certainty."  (ECF No. 384 ¶ 4.)  Although I am concerned by the continued spread of COVID-19 in the federal prison system, I cannot grant a motion for compassionate relief on this basis alone.  Moreover, the defendant has not established that he has pursued and exhausted the required administrative procedures.  Accordingly, to the extent that the defendant seeks compassionate release, his motion is denied without prejudice to renew at such time as the defendant can establish that he meets the statutory requirements of § 3582.

## CONCLUSION

For the reasons set forth above, the defendant's motion to vacate, set aside or correct his sentencing pursuant to 28 U.S.C. § 2255(a) is denied in its entirety.  I do not issue a certificate of

appealability because the defendant has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The defendant's motions to appoint counsel and for emergency bail are denied as moot. The Clerk of Court is respectfully directed to close the civil action and mail a copy of this Order to the defendant.

**SO ORDERED**.

        s/Ann M. Donnelly
        _____
        ANN M. DONNELLY
        United States District Judge

Dated: Brooklyn, New York
      May 21, 2021